UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SELF INITIATED LIVING OPTIONS, INC., a nonprofit organization GINA BARBARA, and RAYMOND HAREWOOD, individually and on behalf of themselves and all others similarly situated; <br> Plaintiffs <br><br> - against - <br><br> LONG ISLAND RAIL ROAD COMPANY, a public benefit corporation, and PHILLIP ENG, in his official capacity as president of the Long Island Rail Road. <br> Defendants | 18 Civ. 4312 <br><br> **COMPLAINT** <br><br><br> **JURY DEMAND** |

Plaintiffs, SELF INITIATED LIVING OPTIONS, INC., (hereinafter "SILO"), GINA

BARBARA, and RAYMOND HAREWOOD, complaining through their attorney from the Law

Office of James E. Bahamonde, respectfully alleges against Defendants LONG ISLAND RAIL

ROAD COMPANY ("LIRR") and PHILLIP ENG (collectively "Defendants"):

### STATEMENT OF CLAIM

1.      New Yorkers regularly rely on the LIRR for reliable, safe, and speedy travel throughout

Long Island and to Manhattan. Annually, the LIRR serves more than 89 million riders. However,

the LIRR is not a convenient or reliable mode of transportation for persons who require the use

of wheelchairs and scooters.

2.      In violation of well-settled, decades old law, Defendants have chosen a discriminatory

practice to exclude Plaintiffs and all other disabled persons, who are similarly situated, from

having meaningful equal access to and opportunity to travel on the LIRR.

3.      Plaintiffs file this action on behalf of themselves and for those similarly situated,

complaining of violations of Title II of the ADA, 42 U.S.C. §§ 12131 *et seq*., ("ADA"), section

1

504 of the Rehabilitation Act of 1973, ("Rehabilitation Act"), 29 U.S.C. § 794, their implementing regulations, 49 C.F.R. part 38, and New York City [Administrative Code] Human Rights Law § 8-107 *et seq*.

4.      This action seeks to prosecute the longstanding and systemic discrimination perpetrated against mobility impaired persons who desire to travel on the commuter rail cars operated and maintained by the LIRR.

5.      At each of LIRR's stations, including the terminal at Penn Station in Manhattan, there exists a horizontal gap of more than 6 inches between the platform and the commuter rail car. Consequently, a person who uses a wheelchair or scooter cannot board or detrain a commuter rail car without the use of a bridge plate. A bridge plate is a piece of equipment used to overcome the horizontal gap between the train and the platform at each station.

6.      Under the ADA and Rehabilitation Act, a member of the train crew is required to deploy a bridge plate, monitor the disabled person's ingress to, or egress from, the rail car, and subsequently stow the bridge plate. However, because Defendants and their employees frequently fail to deploy the bridge plate for disabled passengers, the latter party is frequently prevented from boarding a rail car they have already purchased tickets for. Other times, disabled persons are essentially trapped on a rail car, unable to depart from the train. This continuous discriminatory exclusion results in a denial of meaningful, equal access to the commuter rail cars by mobility impaired persons.

7.      Aside from the foregoing, at Penn Station, the method used by Defendants to announce the track number from which their rail cars will depart, creates a significant impediment to equal access by mobility-impaired passengers. For example, if a passenger in a wheelchair or scooter wishes to board a train at Penn Station, the disabled individual only has 10 minutes from the

moment the track number of their train is announced to the time the train doors close. Within this 10-minute time frame, a mobility-impaired passenger is required to locate and use a functioning elevator to access the train platform.  Additionally, because of Penn Station's configuration, only one elevator, which is useable by the general public, serves two tracks. Upon exiting the elevator at the train platform, the disabled passenger has approximately 5 minutes or less until the train doors close, but first must search among the crowd of other passengers, which becomes particularly acute during the morning and afternoon rush, for an LIRR crew member, who themselves must locate and deploy the bridge plate to allow the disabled passenger to board the train. However, as is always the case in Plaintiffs' collective experiences, by the time the disabled person reaches the track platform, all of the train's crew members have already boarded the train, making finding someone to deploy the bridge pate nearly impossible.  Consequently, disabled passengers are regularly left on the waiting platform watching their train leave without them.

8.      In addition, in violation of federal law and without regard for the disabled passenger's safety, even if a mobility impaired person is able to locate an LIRR crew member to deploy the bridge plate and is able to board a rail car, crew members frequently do not stow the bridge plate but store it in an unsecure manner alongside the mobility-impaired passenger. In the event of a sudden stop of a rail car, Defendants failure to securely stow the bridge plate causes a hazard to Plaintiffs and other passengers.

## VENUE AND JURISDICTION

9.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiffs' rights under the ADA and Rehabilitation Act.

10.     The Court has supplemental jurisdiction over Plaintiffs' allegations arising from Defendants' local law violations pursuant to 28 U.S.C. § 1367(a).

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, alleged herein, occurred in this district.

## PARTIES

12.     Plaintiff SELF INITIATED LIVING OPTIONS, INC. (hereinafter "SILO") is a New York nonprofit corporation company authorized by the Secretary of the State of New York to do business in New York State with its principal County of business designated as Suffolk County.

13.     SILO is a nonprofit, independent living center dedicated to the inclusion of persons with disabilities in all activities and the removal of barriers that hamper an individual's ability to fully participate in society. SILO's mission encompasses a commitment to assist disabled persons to become independent, as well as provide information to the public and other nonprofit organizations in Suffolk County about disability discrimination laws and the removal of barriers. SILO provides its services free of charge and without regard to income.

14.     SILO also conducts pretextual testing and investigates allegations of disability discrimination. SILO employs disability advocates for the purpose of addressing complaints of disability discrimination and removal of barriers, and obtaining information about the conduct of governments, landlords, agents and others to determine whether disability discrimination is taking place.

15.     SILO has expended staff time and other resources to investigate and respond to Defendants' discriminatory operation and practice, which has diverted resources away from other SILO activities.

4

16.    SILO's constituents, staff, and volunteers with mobility disabilities are harmed by Defendants' failure to provide meaningful access to and participation in travel on the LIRR.

17.    Defendants' discriminatory practices have frustrated SILO's mission to remove barriers and to ensure that all disabled persons have equal access to and are included in everyday activities in our society.

18.    Plaintiff GINA BARBARA is now, and at all times mentioned in this complaint, a resident of Nassau County, New York.

19.    Ms. Barbara is a qualified person, meaning she is disabled as this term is defined in the aforementioned statutes. At all relevant times, Ms. Barbara has been substantially limited in her ability to walk.

20.    As a direct and proximate result of Ms. Barbara's disability, and at all times relevant to the Complaint, she has required the use of a motorized wheelchair to ambulate. Ms. Barbara regularly relies on the LIRR to commute between Long Island and Manhattan.

21.    Ms. Barbara has experienced and continues to experience harm as a result of the unequal access to the LIRR.

22.    Plaintiff RAYMOND HAREWOOD is now, and at all times mentioned in this Complaint, a resident of Suffolk County, New York.

23.    Mr. Harewood is a qualified person with a disability. At all relevant times, Mr. Harewood has been substantially limited in walking.

24.    As a direct and proximate result of Plaintiff Raymond Harewood's disability, and at all relevant times, he has required the use of a scooter for mobility. Mr. Harewood relies on the LIRR to commute around Long Island and into Manhattan.

5

25.     Mr. Harewood has experienced and continues to experience harm as a result of the unequal access to the LIRR.

26.     Defendant LONG ISLAND RAIL ROAD COMPANY (hereinafter LIRR) is a subsidiary public benefit corporation of Metropolitan Transportation Authority ("MTA") formed under the laws of the State of New York and wholly owned subsidiary of the MTA.

27.     The Long Island Rail Road Company is a subsidiary agency of the Metropolitan Transportation Authority. The LIRR is a public benefit corporation governed under the Public Authorities Law and its executive office is located at Jamaica Station in Jamaica, NY 11435.

28.     PHILLIP ENG is named as a Defendant herein in his official capacity as the President of the LIRR.

**CLASS ACTION**

29.     Plaintiffs bring this suit for declaratory and injunctive relief and as a class action for all those similarly situated, who are mobility impaired, by reason of various disabilities, and who need a bridge plate to board and detrain a commuter rail car, and who are protected by, as well as beneficiaries of, the ADA, Rehabilitation Act, and New York City Administrative Code.

30.     Plaintiffs, complaining for themselves and all other residents in the City of New York, Nassau County, Suffolk County, and State of New York, whom are similarly situated, alleges: (a) the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable; (b) there are questions of law or fact common to the class which predominate over any questions affecting only individual members; (c) the claims or defenses of the representative parties are typical and predominate over any questions affecting the claims or defenses of the class; (d) the representative parties will fairly and adequately protect the interests of the class; and (e) a class action is superior to other available methods for the fair and efficient

adjudication of the controversy.

## STATUTORY AND REGULATORY FRAMEWORK

31.     The 2010 United States Census has indicated that there are more than 1.39 million New Yorkers with mobility disability.

32.     Pursuant to the ADA, the Rehabilitation Act, and New York City Human Rights Law, individuals with disabilities are a protected class.

33.     Under the ADA, Defendants must provide commuter rail cars that are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.

34.     All brand-new commuter rail cars operated by the LIRR are required to provide a boarding device, such as a ramp or bridge plate, so mobility impaired persons are able to board or detrain a commuter rail car.

35.     Under the ADA and Rehabilitation Act, Defendants must provide the means for a mobility impaired person to bridge the gap between the waiting platform and the rail car, in order to board a train.

36.     Upon boarding a train, a mobility-impaired passenger, who needs to use a bridge plate to board the train, notifies a member of the train's crew of their destination and need for assistance to detrain with the bridge plate. However, there have been numerous incidents where crew members have failed to provide such assistance.

37.     When not in use, bridge plates must be stowed away in a secure manner so as not to impinge on a passenger's wheelchair or scooter, or pose any hazard to the individual, as well as other passengers, in the event of a sudden stop.  In Plaintiffs' collective experiences, crew members of LIRR trains regularly fail to observe these safety procedures.

38.     Discriminatory intent is not an essential element for injunctive relief.

39.     Discriminatory intent is not required to establish liability under New York City Human Rights Law.

## FACTUAL BACKGROUND

40.     Defendant LIRR is charged with the responsibility of providing commuter rail transportation in Suffolk, Nassau, Queens, and Kings Counties, and Penn Station.

41.     As President of the LIRR, Defendant Phillip Eng, is responsible for the policies of supervision and training of the crew members of the LIRR.

42.     The president of the LIRR has the authority to address the alleged discrimination and to institute corrective measures on the LIRR's behalf.

43.     The president of the LIRR has had actual knowledge of the systemic problem of the alleged discrimination and providing unequal services and treatment to individuals with disabilities but has failed to adequately respond.

44.     When a commuter rail car arrives at a station, the foregoing statutes impose a duty upon Defendants' crew members to monitor the station platform to ascertain if an individual requires the deployment of a bridge plate. When Defendants' crew members fail to perform this duty, the train leaves and abandons the mobility impaired person on the platform.

45.     Getting the attention of a crew member while transferring to another train at the Jamaica station is no less difficult for Plaintiffs. In fact, at the Jamaica, Queens station, when the mobility impaired person needs to use a bridge plate to board another train, in Plaintiffs' experience, the train that must be transferred to is frequently on a tight schedule and in a rush to leave the station. Therefore, at the Jamaica station, crew members appear to be more preoccupied with everything other than checking the platforms to identify passengers in need of a bridge plate. Consequently, Plaintiffs have experienced being abandoned on the platform.

46.    Likewise, at Penn Station, it is even more difficult to locate a crew member to obtain a bridge plate to board the train. Consequently, there have been many incidents where Plaintiffs have been abandoned on the platform without an offer of assistance to board the train.

**Harm related to Gina Barbara**

47.    Ms. Barbara regularly travels to Penn Station on the commuter rail cars operated by LIRR from the Bellmore station near her home, which is among the stations on the Babylon line.

48.    As noted above, because Ms. Barbara uses a wheelchair for mobility, she cannot board or detrain a commuter rail car without the use of a bridge plate.

49.    In her experience with riding the LIRR's commuter trains, Ms. Barbara frequently has tremendous difficulty catching the attention of a crew member to board the train.  More often than not, Ms. Barbara has had to scramble to find an available crew member because train crews frequently fail to check the waiting platform to identify if there are any disabled passengers in need of assistance.

50.    In 2017, Ms. Barbara had boarded an LIRR train to take her home from Penn Station. However, at the last minute, a track change was announced for the Babylon line requiring Ms. Barbara to get the attention of a crew member to take out the bridge plate so that she could detrain and board the correct train.  In addition to this, Ms. Barbara would then have to take the elevator up from the waiting platform to the main level of Penn Station to another elevator and back down to the newly announced track.  Unfortunately, by the time she was able to detrain, the correct train had already left the station.

51.    At another time in the same year, Ms. Barbara wanted to take the Babylon line from Penn Station to Bellmore.  When the track number for this train was announced, Ms. Barbara went to the elevator serving the waiting platform only to find that the elevator was out of service. She

9

then went to the MTA/LIRR customer service desk to inform them that the elevator she needed

to use to get to the waiting platform was not working.  The customer service representative told

Ms. Barbara that the next train to her destination would be on one of the other 6 tracks where the

elevators were working.

52.     Nonetheless, the next train to her destination was scheduled for the same track where the

elevator was broken.  Ms. Barbara again went to the customer service desk to complain, and

once again the representative assured Ms. Barbara this predicament would not repeat itself.

53.     However, for a third time, the next train announced for Ms. Barbara's destination was

scheduled for the same track where the elevator was broken. In fact, Ms. Barbara had to wait for

four train cycles before she could leave Penn Station.

54.     On March 24, 2018, Ms. Barbara was traveling from Bellmore to Penn Station. Upon

boarding the train, Ms. Barbara notified a crew member wearing a badge numbered 6926 that she

will be traveling to Penn Station and will need the bridge plate to detrain. The crew member

stated to Ms. Barbara that he would not return to do so if, in his subjective judgement, he felt gap

between the rail car and the waiting platform was not too big for her wheelchair to cross. In

response, Ms. Barbara said, "you're kidding, you better come back. I need help, that is your job."

55.     Moreover, instead of securing the bridge plate in a secure location, the crew member left

the loose bridge plate next to Ms. Barbara's wheelchair. Upon arriving at Penn Station, the crew

member never returned to assist or deploy the bridge plate.

56.     Immediately afterwards, Ms. Barbara filed a complaint with the LIRR regarding the

aforementioned incident.  Defendants' representative merely responded that "this happens all the

time."

**Harm related to Georgina Belmonte**

57.     Georgina Belmonte relies on a scooter to ambulate and regularly relies on the LIRR to commute between Long Island, and into Manhattan as well.

58.     Ms. Belmonte uses a scooter for mobility. Therefore, she cannot board or detrain a commuter rail car without the use of a bridge plate.

59.     Ms. Belmonte regularly travels to Penn station from the LIRR's Ronkonkoma station, which is the closest to her home.

60.     Ms. Belmonte frequently has difficulty catching the attention of a crew member to board the Ronkonkoma line from Penn Station.

61.     On February 4, 2018, Ms. Belmonte was traveling from Penn Station to Ronkonkoma. When the train arrived at the Ronkonkoma station, a member of the train's crew failed to return to deploy the bridge plate so Ms. Belmonte could depart the train. In addition, because the Ronkonkoma station is the terminus for this line, the entire train crew had already departed from the train and no one was available to assist Ms. Belmonte off the train, or did a member of the train's crew check each car to ensure all passengers had departed the train.

62.     After waiting some time, Ms. Belmonte realized that she had been abandoned on the train and assumed nobody from the train's crew would return to assist her.  Accordingly, she attempted to depart the train by herself.  However, because of large gap between the train and the station platform, one of the wheels on her scooter got caught in the gap and Ms. Belmonte fell over onto the ground.

63.     Ms. Belmonte sustained bodily injury as well as physical damage to her scooter.

64.     Upon filing a complaint with the LIRR, Defendants' representative admitted to Ms. Belmonte that crew members frequently fail to deploy the bridge plate for disabled persons.

**Harm related to Raymond Harewood**

65.    Like Ms. Barbara, Mr. Harewood regularly travels to Penn Station using the Babylon line operated by the LIRR.

66.    Mr. Harewood uses a scooter for mobility. Therefore, he cannot board or detrain a commuter rail car without the use of a bridge plate.

67.    As is the case with Plaintiff Barbara and Georgina Belmonte, Mr. Harewood frequently has great difficulty catching the attention of a crew member to assist him with boarding a train car.

68.    In a number of instances, Mr. Harewood has had to use his fist to bang on a train car door or window to get a crew member's attention so that he would not be abandoned at the Babylon station.

69.    On another occasion, while waiting on the platform to get the attention of a crew member to deploy a bridge plate, the rail car doors closed. As the train began to move away from the station, Mr. Harewood realized he was going to be abandoned on the platform. Therefore, he began yelling for the train to stop while banging on the rail car doors and windows.

70.    On other occasions when crew members failed to check the waiting platform to see if there was a disabled person needing assistance, Mr. Harewood has attempted traversing the gap between the platform and train car in his scooter by himself.

71.    During all relevant times, Defendants have been aware of their crew members repeated and regular failure to comply the bridge plate for mobility impaired disabled individuals. Nonetheless, Defendants have failed to effect adequate remedies.

72.    All three Plaintiffs have the intention to travel on the commuter rail cars operated by the LIRR once they become readily accessible to and usable to mobility impaired individuals.

**FIRST CAUSE OF ACTION**
**(Violation of Title II of the Americans with Disabilities Act**, 42 U.S.C. §§ 12102 -12165**)**
*(Allegations against Defendants)*

73.     Gina Barbara and Raymond Harewood's mobility impairment is considered a disability as defined in 42 U.S.C. § 12102 and 49 CFR § 37.3.

74.     Plaintiffs Gina Barbara and Raymond Harewood are qualified individuals with disabilities as defined in 42 U.S.C. § 12131(2).

75.     Plaintiffs are qualified individuals with a disability as defined in 42 U.S.C. § 12131(2).

76.     The LIRR is a public entity as defined in 42 U.S.C. § 12131(1) and 49 CFR § 37.3.

77.     The LIRR is a commuter authority as defined in 42 U.S.C. § 12131(1), 42 U.S.C. § 12161(1) and 49 CFR § 37.3.

78.     The LIRR operates and offers commuter rail transportation via the LIRR as defined in 42 U.S.C. § 12161(2).

79.     Defendants are responsible persons as defined in 42 U.S.C. § 12161(5).

80.     Defendants have excluded Plaintiffs from participation in or denied the benefits of the services, programs, or activities of their commuter rail transportation in violation of 42 U.S.C. § 12132.

81.     Defendants have, on the basis of disability, denied Plaintiffs the opportunity to use their transportation service.

82.     Defendants are primarily engaged in the business of transporting people and whose operation affects commerce.

83.     The new, commuter passenger rail cars operated by Defendants are not readily accessible to or usable by individuals with disabilities in violation 42 U.S. Code § 12162(b)(2)(B).

84.     Defendants and their agents routinely do not stow the bridge plates in a manner not to

impinge on a passenger's wheelchair or scooter or pose any hazard to passengers in the event of a sudden stop in violation of 49 CFR § 38.95(c)(7).

85.    Defendants have denied Plaintiffs, on the basis of disability, from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations.

86.    As a direct and proximate result of Defendants' discrimination in violation of the ADA, Plaintiff SILO has suffered damages, including diversion of resources and frustration of mission.

87.    As a direct and proximate result of Defendants unlawful discrimination in violation of the ADA, Plaintiffs GINA BARBARA and RAYMOND HAREWOOD have suffered and continues to suffer mental anguish and emotional distress, including but not limited to depression, humiliation, stress, headache, stomach ache, digestive disorder, embarrassment, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

## SECOND CAUSE OF ACTION
### (Violation of section 504 of the Rehabilitation Act)
*(Allegations against Defendants)*

88.    Plaintiffs reallege and incorporate by this reference all of the allegations set forth in this Complaint as if fully set forth herein.

89.    Plaintiffs Gina Barbara and Raymond Harewood are qualified individuals with a disability.

90.    MTA and LIRR receive federal financial assistance.

91.    The commuter rail transportation operated and controlled by Defendants is a program or activity as defined in 29 U.S. Code § 794(b).

92.    Defendant PHILLIP ENG, in his official capacity as president of the Long Island Rail Road, is a policymaker.

14

93.     Defendant PHILLIP ENG, in his official capacity as president of the Long Island Rail Road, acted with deliberate indifference to Plaintiff's federally protected rights.

94.     Solely by reason of their disability, Defendants excluded Plaintiffs GINA BARBARA, RAYMOND HAREWOOD, and all others similarly situated, from participation in, denied the benefits of, and subjected them to discrimination in violation of the Rehabilitation Act.

95.     As a direct and proximate result of Defendants' discrimination in violation of the Rehabilitation Act, Plaintiff SILO has suffered damages, including diversion of resources and frustration of mission.

96.     As a direct and proximate result of Defendants unlawful discrimination in violation of the Rehabilitation Act, Plaintiffs GINA BARBARA and RAYMOND HAREWOOD have suffered and continues to suffer mental anguish and emotional distress, including but not limited to depression, humiliation, stress, headache, stomach ache, digestive disorder, embarrassment, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

### THIRD CAUSE OF ACTION
**(Violation of NYC Human Rights Law [Administrative Code] § 8-107(4))**
(*Allegations against Defendants*)

97.     Plaintiffs reallege and incorporate by this reference all of the allegations set forth in this Complaint as if fully set forth herein.

98.     Defendants are "persons" as defined in NYC Admin. Code § 8-102(1).

99.     Defendants are places or providers all public accommodation" as defined in NYC Admin. Code § 8-102(9).

100.    The commuter rail provided by Defendants in Queens, Kings, and New York Counties are services, facilities, accommodations, advantages, and privileges as defined in NYC Admin. Code § 8-102(9).

101.    Plaintiffs have a "disability" as defined in NYC Admin. Code § 8-102(16).

102.    Defendants have, directly or indirectly, refused and denied Plaintiffs, and all others similarly situated, the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation in violation of New York City Admin. Code § 8-107(4)(1).

103.    Defendants have, directly or indirectly, represent to plaintiffs, and all others similarly situated, that any accommodation, advantage, facility, or privilege of any such place or provider of public accommodation is not available when in fact it is available in violation of NYC Admin. Code § 8-107(4)(1)(b).

104.    Defendants have, directly or indirectly, made a declaration or notice to the effect that the full  and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, facilities and privileges of any such place or provider of public accommodation shall be refused, withheld from or denied to any person on account of the disability of Plaintiffs, and all others similarly situated, in violation of NYC Admin. Code § 8-107(4)(2)(a).

105.     Defendants have, directly or indirectly, demonstrated that the patronage or custom of Plaintiffs, and all others similarly situated, are unwelcome, objectionable, not acceptable, undesired, or unsolicited because of such person's actual or perceived disability, in violation of NYC Admin. Code § 8-107(4)(2)(b).

106.    Pursuant to New York City Human Rights Law § 8-502, notice of this action has been served upon New York City's Commission on Human Rights.

107.    As a direct and proximate result of Defendants' discrimination in violation of New York City Human Rights Law, Plaintiff SILO has suffered damages, including diversion of resources and frustration of mission. As a direct and proximate result of Defendants discrimination in

violation of the New York City Administrative Code, Plaintiffs GINA BARBARA and

RAYMOND HAREWOOD have suffered and continues to suffer mental anguish and emotional

distress, including but not limited to depression, humiliation, stress, headache, stomach ache,

digestive disorder, embarrassment, anxiety, loss of self-esteem and self-confidence, and

emotional pain and suffering.

108.    All of Defendants' actions were taken intentionally, maliciously and/or with reckless

and/or callous indifference to Plaintiffs' rights under NYC Human Rights Law.

### FOURTH CAUSE OF ACTION
### (Violation of NYC Human Rights Law [Administrative Code] § 8-107(6))

109.    Plaintiffs reallege and incorporate by this reference all of the allegations set forth in this

Complaint as if fully set forth herein.

110.    Upon information and belief, Defendants aided and abetted the discriminatory conduct of

its crew members.

111.    Upon information and belief, Defendants and their agents have failed to implement,

supervisor, and monitor the actions of its crew members.

112.    Such inaction has created and fosters an environment for its crew members to not monitor

the station platforms, and to deploy the bridge plate for mobility impaired individuals.

113.     Defendants have aided, abetted, compelled, and coerced the doing of acts forbidden

under New York City Human Rights Law, or attempted to do so in violation of NYC Admin.

Code § 8-107(4)(6).

114.    As a direct and proximate result of Defendants' discrimination in violation of New York

City Human Rights Law, Plaintiff SILO has suffered damages, including diversion of resources

and frustration of mission.

115.    As a direct and proximate result of Defendants discrimination in violation of the New York City Administrative Code, Plaintiffs GINA BARBARA and RAYMOND HAREWOOD have suffered and continues to suffer mental anguish and emotional distress, including but not limited to depression, humiliation, stress, headache, stomach ache, digestive disorder, embarrassment, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

116.    All of Defendants' actions were taken intentionally, maliciously and/or with reckless and/or callous indifference to Plaintiffs' rights under NYC Human Rights Law.

## FIFTH CAUSE OF ACTION
### (Violation of NYC Human Rights Law [Administrative Code] § 8-107(15))
(*Allegations against Defendants*)

117.    Plaintiffs reallege and incorporate by this reference all of the allegations set forth in this Complaint as if fully set forth herein.

118.    Reasonable accommodations and modifications are necessary to enable Plaintiffs and all others similarly situated the ability to enjoy meaningful access to and use of Defendants commuter rail transportation.

119.    Defendants failed to provide Plaintiffs, and all others similarly situated, with reasonable accommodations in violation of NYC Administrative Code § 8-107(15).

120.    In violation of New York City Admin. Code, the manager, agent, and employee of defendants' public accommodation, have, because of the actual or perceived disability of the Plaintiffs, and all others similarly situated, have directly or indirectly, refused, withheld from and denied Plaintiffs the accommodations, advantages, facilities or privileges thereof.

121.    Defendants have failed to make reasonable accommodations to enable Plaintiffs, and all others similarly situated, so that they may enjoy meaningful access to and use of Defendants

commuter rail transportation in violation of New York City Administrative Code § 8-107(15).

122.    Defendants and their agents have known or should have known Plaintiffs Gina Barbara and Raymond Harewood are mobility impaired because they use a wheelchair or scooter for mobility.

123.    As a direct and proximate result of Defendants' disability discrimination in violation of the New York City Human Rights Law, Plaintiff SILO has suffered damages, including diversion of resources and frustration of mission.

124.    As a direct and proximate result of Defendants disability discrimination in violation of the New York City Human Rights Law, Plaintiffs GINA BARBARA and RAYMOND HAREWOOD have suffered and continues to suffer mental anguish and emotional distress, including but not limited to depression, humiliation, stress, headache, stomach ache, digestive disorder, embarrassment, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

125.    All of Defendants' actions were taken intentionally, maliciously and/or with reckless and/or callous indifference to Plaintiffs' rights under NYC Human Rights Law.

## SIXTH CAUSE OF ACTION
### (Disparate Impact)

126.    Plaintiffs reallege and incorporate by this reference all of the allegations set forth in this Complaint as if fully set forth herein.

127.    Defendants policy and practice of announcing the track at Penn Station has a disparate impact on disabled persons with motor disabilities.

128.    Defendants' policy and practice have the effect of excluding disabled persons with motor disabilities from participation in or denied the benefits of the services, programs, or activities of

their commuter rail transportation.

129.    Defendants' discriminatory policy and practice have the effect of denying disabled persons with motor disabilities the opportunity to use their commuter rail transportation.

130.    Defendants' policy and practice has a disparate impact against disabled persons with motor disabilities in violation of the ADA, Rehabilitation Act, and New York City Human Rights Law § 8-107(17).

131.    Defendants' discriminatory policy and practice have the effect of denying disabled persons with motor disabilities the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation in violation of New York City Human Rights Law § 8-107(17).

132.    As a direct and proximate result of Defendants' disparate impact, Plaintiffs GINA BARBARA and RAYMOND HAREWOOD have suffered and continues to suffer mental anguish and emotional distress, including but not limited to depression, humiliation, stress, headache, stomach ache, digestive disorder, embarrassment, anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

133.    As a direct and proximate result of Defendants' disparate impact in violation of the ADA, Rehabilitation Act, and New York City Human Rights Law, Plaintiff SILO has suffered damages, including diversion of resources and frustration of mission.

134.    Defendants knew of or ratified the discriminatory acts of its agents, ignored its duties under the law, or otherwise engaged in knowledgeable inaction.

135.    As a direct and proximate result of Defendant's actions that have a disparate impact, in violation of the ADA, Rehabilitation Act, and New York City Human Rights Law, Plaintiffs have been prevented from having meaningful access to and use of Defendants commuter rail

20

transportation.

## SEVENTH CAUSE OF ACTION
### (Declaratory Relief)

136.    Plaintiffs reallege and incorporate by this reference all of the allegations set forth in this Complaint as if fully set forth herein.

137.    Plaintiffs are entitled to a declaratory judgment concerning the violations committed by Defendant specifying the rights of Plaintiffs and other persons similarly situated as to the policies, practices, procedures, facilities, goods and services provided by Defendant.

138.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief from the Court:

A.    Certify this case as a class action;

B.    Issue a permanent injunction 1) proscribing disability discrimination, 2) requiring Defendants to make all necessary modifications to Defendants' policies or practices so that Plaintiffs will not be subject to further discrimination in violation of New York City Administrative Code, the Rehabilitation Act, and Title II of the ADA; 3) modify its policy and practice of announcing the track to disabled persons at Penn station; and 4) modify its policy and practice of training and supervision of its train crews to ensure the deployment of the bridge plate and proper treatment of disabled individuals.

C.    Enter declaratory judgment, specifying Defendants federal and City law violations and declaring the rights of Plaintiffs and other persons similarly situated as to Defendants' policies, practices, procedures, facilities, goods, and services offered to the public.

D.     The court retain jurisdiction over the Defendants until the court is satisfied that the

Defendants' disparate impact and unlawful practices, acts and omissions no longer exist and will

not reoccur.

E.     Award Plaintiffs compensatory damages in the amount to be determined at trial for

Defendants violation of the ADA.

F.     Award Plaintiffs compensatory damages in the amount to be determined at trial for

Defendants violation of the Rehabilitation Act.

G.     Award Plaintiffs punitive damages in the amount to be determined at trial for Defendants

violation of New York City [Administrative Code] Human Rights Law.

H.     Find that Plaintiffs are a prevailing party in this litigation and award reasonable attorney

fees, costs and expenses, and such other and further relief, at law or in equity, to which the

Plaintiffs and other persons similarly situated may be justly entitled.


Dated: July 30, 2018

LAW OFFICES OF JAMES E. BAHAMONDE,
P.C.

X _____

JAMES E. BAHAMONDE, ESQ.
Attorney for the Plaintiffs
2501 Jody Court
North Bellmore, NY 11710
Tel:  (646) 290-8258
Fax: (646) 435-4376
E-mail:  James@CivilRightsNY.com