**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SELF INITIATED LIVING OPTIONS, INC., GINA BARBARA, and RAYMOND HAREWOOD, Individually and on Behalf of all Others Similarly Situated,<br><br>                           Plaintiff<br><br>- against -<br><br>LONG ISLAND RAIL ROAD COMPANY and PHILLIP ENG, in his official capacity as President of LIRR<br><br>                           Defendants | 18cv4312 (AKT)<br><br>**SETTLEMENT AGREEMENT**<br><br>**F I L E D**<br>IN CLERK'S OFFICE<br>U.S. DISTRICT COURT E.D.N.Y.<br><br>★  JUL 1 5 2020  ★<br><br>LONG ISLAND OFFICE |

**WHEREAS**, this Settlement Agreement ("Agreement") is entered into by and between Plaintiffs SELF INITIATED LIVING OPTIONS, INC. (SILO), GINA BARBARA, and RAYMOND HAREWOOD (hereinafter referred to as "Plaintiffs "), and Defendants LONG ISLAND RAIL ROAD COMPANY and PHILLIP ENG, in his official capacity as President of LIRR (hereinafter referred to as "Defendants" or Plaintiffs and Defendants both collectively referred to as the "Parties");

**WHEREAS**, Plaintiffs filed this action against Defendants on July 30, 2018 alleging disability discrimination in violation of Title II of the ADA, 42 U.S.C. §§ 12131 *et seq*., ("ADA"), section 504 of the Rehabilitation Act of 1973, ("Rehabilitation Act"), 29 U.S.C. § 794, their implementing regulations, 49 C.F.R. part 38, and New York City [Administrative Code] Human Rights Law § 8-107 *et seq*., pursuant to which Plaintiffs sought declaratory and injunctive relief, damages, attorneys' fees, litigation expenses and costs;

1

**WHEREAS**, Defendant LONG ISLAND RAIL ROAD COMPANY is a commuter transit authority and offers commuter rail transportation within the meaning of the ADA, 42 U.S.C. § 12161(1) and 42 U.S.C. § 12161(2).

**WHEREAS**, Defendant Philip Eng, is the President of the commuter authority known as Long Island Rail Road Company.

**WHEREAS**, Plaintiffs allege Defendants have engaged a long-standing and systemic discrimination against mobility-impaired persons and failed to provide meaningful equal access and opportunity to travel on the LIRR. In particular, Plaintiffs allege Defendants continuously fail to provide assistance to mobility-impaired persons to overcome the horizontal gap between the station platform and commuter train cars in Penn Station and throughout Long Island.

**WHEREAS,** Defendants do not admit, and specifically deny, any liability, wrongdoing or violation of any law, statute, regulation or policy, and it is expressly understood that this Agreement is being entered into by the Defendants solely for the purpose of avoiding the costs of further litigation and amicably resolving all matters in controversy, disputes, causes of action, claims, contentions and differences of any kind whatsoever between the Parties. Neither this Agreement nor the furnishing of the consideration provided for herein shall be deemed or construed, at any time or for any purpose, as an admission by the LIRR of any liability or unlawful conduct of any kind.

**WHEREAS**, the parties are interested in resolving the issues alleged in the complaint in this action, and have negotiated in good faith for that purpose;

**WHEREAS**, none of the parties to the above-captioned action is an infant or incompetent person;

2

**WHEREAS,** Plaintiffs and Defendants have agreed to a settlement of this action to avoid further expense, time, effort and uncertainty with respect to this action;

**WHEREAS,** Plaintiffs and Defendants respectfully request that the Court approve and enter the Stipulation of Settlement, and retain jurisdiction to enforce the terms of their settlement;

**NOW, THEREFORE,** in consideration of the mutual covenants and undertakings contained herein,

**IT IS HEREBY STIPULATED AND AGREED** by and between the parties and/or their respective counsel that all claims will be compromised, settled, released, and dismissed upon and subject to the terms of this Agreement, as follows:

## SECTION I

## DEFINITIONS

1. As used in this Agreement, the following terms will have the following meanings:

    a. "Plaintiffs" means Self Initiated Living Options, Inc., Gina Barbara, and Raymond Harewood.

    b. "Defendants" means the Long Island Rail Road Company and Phillip Eng in his official capacity as President of LIRR.

    c. "SAFER reports" means Situational Awareness for Efficient Railroading. It is a document created by supervisors in the Transportation Department and used to report noncompliance with policy, except attendance policy.

## SECTION II

## CONTINUING JURISDICTION

2.      All obligations under this Agreement, unless otherwise specified, will commence from the date this Agreement is so-ordered by the Court ("Effective Date"), and shall remain in effect for a period of five (5) years from the Effective Date.

3.      Concurrently with the execution of this Agreement, Defendants will deliver to the law firm of James E. Bahamonde, PC, as counsel for Plaintiffs, a signed Stipulation and Order of Dismissal. The parties agree to stipulate that dismissal will be with prejudice and each party to bear its own costs.

4.      The parties also agree to stipulate that the order will vest the Court with jurisdiction for the sole purpose of enforcing the terms of the Agreement. Counsel for Plaintiffs will file the executed Stipulation and Order of Dismissal, with the Court to dismiss the case within five (5) business days after the Defendants have made the payment described in the Paragraphs 26-27.

5.      Parties agree that the United States District Court for the Eastern District of New York will retain jurisdiction to enforce the terms of this Agreement upon the filing of an appropriate motion by any of the Plaintiffs.

6.      The Agreement shall, for all purposes, be governed by, construed, and enforced in accordance with federal law.

## SECTION III

## GENERAL AGREEMENT

7.      The Parties acknowledge that each party has reviewed and revised the Agreement and that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of the Agreement.

8.     The Agreement constitutes the entire agreement between the Parties hereto with respect to the matters set forth herein and supersedes in its entirety any and all agreements or communications, whether written or oral, previously made in connection with the matter herein. Any agreement to amend or modify the terms and conditions of the Agreement must be in writing and executed by the Parties hereto.

9.     Neither the Agreement or anything contained herein shall constitute, or is to be construed as, an admission by Defendants, or evidence thereof, of any liability, wrongdoing, or unlawful conduct.

10.    The Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successor and/or assigns.   The Parties shall perform their obligations under the Settlement Agreement in good faith.

11.    The Parties acknowledge they have been afforded an opportunity to consider the terms and conditions of this Agreement, that they have read and understand the terms and conditions herein, and that they have been advised to obtain counsel, and have been provided with the opportunity to consult with their respective counsel prior to their execution of the Agreement.

12.    The Parties agree that the Agreement is being consummated in New York and that performance by Defendants will be in New York, Kings, Queens, Nassau, and Suffolk Counties. The Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

13.    Defendants, their officers, employees, agents, successors, and assigns agree not to discriminate on the basis of disability as prohibited by the Title II of the ADA, 42 U.S.C. §§ 12131 *et seq.*, ("ADA"), section 504 of the Rehabilitation Act of 1973, ("Rehabilitation Act"), 29 U.S.C. § 794, their implementing regulations, 49 C.F.R. part 38, and New York City [Administrative

Code] Human Rights Law § 8-107 *et seq*., and not to retaliate against Plaintiffs. The parties agree that this provision is not intended to create any additional rights and that an alleged violation of any Civil Rights and/or Human Rights Law unrelated to the current action shall not constitute a violation of the settlement agreement.

## SECTION IV

## SPECIFIC PROVISIONS

14.   **TRAINING.** The LIRR agrees to adopt a policy and implement a plan to:

a.   Within six (6) months of fully executing the Agreement, LIRR agrees to adopt a policy to develop and maintain a permanent curriculum for disability rights training given to each employee charged with the responsibility for interacting with users of Defendants' commuter rail, including those acting in a managerial and supervision capacity, as to the requirements, spirit, and purpose of the ADA, Rehabilitation Act, New York State Human Rights Law and New York City Administrative Code (hereinafter referred to as "disability rights training").

i.   The disability rights training shall include the following topics: LIRR policies related to reasonable accommodation, the proper method of interacting with disabled passengers, responsibility with providing assistance to overcome the platform gap, requirement that the station platform be visually inspected at the instance a train door opens and before departing a station to identify if a mobility-impaired person needs assistance boarding a train, assisting a mobility-impaired person with disembarking a train, deployment of a bridge plate, responsibility to ask a passenger who has received assistance in boarding the train of their final destination and if assistance will be necessary upon

6

disembarking, securing a bridge plate when not in use, enforce priority seating of mobility-impaired persons, steps related to the announcement of, and disability access to, the platforms at Penn Station, and obligation to be aware of elevator outages and to take steps to notify the Movement Bureau when the final destination of a mobility-impaired person has a nonworking elevator.

b.     Employees will be advised during training the LIRR has received complaints from mobility-impaired passengers that they have had difficulty getting the attention of crewmembers to either board or disembark a train.

c.     <u>Represented Employees, Conductors and assistant conductors</u>. Within six (6) months of fully executing the Agreement, LIRR agrees to adopt a policy to develop and maintain a permanent curriculum for disability rights training given to conductors and assistant conductors during initial training and biennial re-certification.

   i.     At the initial training and biennial re-certification, conductors and assistant conductor shall receive disability rights training, as described in Paragraph 14(a), in person and in a classroom setting or by remote learning. The attendance of employees at the disability rights training shall be mandatory and a record of attendance taken.

   ii.    Conductors and assistant conductors shall be advised that compliance with their observation of the platforms, and use and stowing of the bridge plate will be an observation on the "SAFER" report.

   iii.   Only instructors who have received training concerning the disability rights laws discussed herein shall be permitted to train represented employees concerning reasonable accommodation, the proper method of interacting with

disabled passengers, responsibility with providing assistance to overcome the platform gap, requirement that the station platform be visually inspected at the instance a train door opens and before departing a station to identify if a person needs assistance boarding a train, assisting a mobility-impaired person disembark a train, deployment of a bridge plate, responsibility to ask a passenger who has received assistance in boarding the train of their final destination and if assistance will be necessary upon disembarking, securing the bridge plate when not in use, enforcing priority seating of mobility-impaired persons, steps related to the announcement of, and disability access to, the platforms at Penn Station, and the obligation to be aware of elevator outages and to take steps to notify the Movement Bureau when the final destination of a mobility-impaired person has a nonworking elevator.

d.  <u>LIRR Management in the Transportation Department</u>. Provide Management in the Transportation Department the disability rights information provided to conductors during initial training and biennial recertification. The training can be computer based and/or informational.  Those responsible for preparing SAFER reports will be advised that an observation for Rule 1804(d) has been added to the reports.

e.  <u>Ambassadors</u>. Ambassadors shall receive the disability training consistent with their job title and responsibilities at their respective initial training and biennial recertification. (*See* Paragraph 14(a)).

f.  <u>Station Master</u>. Station Master and related personnel shall receive training regarding the procedure for inoperable elevators at Penn Station. (*See*, Paragraphs 17(b)).

15.  **NOTICES.** The LIRR agrees to adopt a policy and implement a plan to:

8

    a.      Issue a Notice every quarter to its conductors and assistant conductors regarding the proper method of interacting with disabled passengers, visual inspection of the station platform to identify if a person needs assistance boarding, deployment of a bridge plate, securing a bridge plate when not in use, priority seating of mobility-impaired persons and assistance with disembarking a train, and notification process of elevator outages related to Penn Station.

16.    **PENN STATION.** The LIRR agrees to adopt a policy and implement a plan to:

    a.      Continue its customer assistance program for people with mobility limitations who request assistance at Penn Station named 'LIRR Cares' at the west end terminals at Penn Station from 6:00 a.m. to 10:00 p.m. that will serve as a customer assistance program for people with mobility limitations who request assistance to board or disembark a train.

    b.      The LIRR agrees to address the issue of increasing visibility of mobility impaired customers on the platforms at Penn Station with the LIRR's ADA Task Force and seek input from the mobility impaired community for potential solutions on how to increase the visibility of mobility impaired customers on the platforms Penn Station.

    c.      Six months from the date this Agreement is so ordered, the LIRR shall provide counsel for Plaintiffs with an update on the research related to increasing visibility of mobility impaired customers on the platforms at Penn Station.

17.    **NOTICE OF INOPERABLE ELEVATORS.** The LIRR agrees to adopt a procedure and implement a plan to:

    a.      Continue with LIRR's elevator notification policy which provides notice to the public of inoperable elevators via text message, email and on its website.

b.      **Penn Station**. In the event that the LIRR becomes aware of an inoperable elevator at Penn Station, conductors and crew members on trains en route to Penn Station shall be notified of the inoperable elevators and make the appropriate announcements on the en route train.

   i.     The LIRR agrees to adopt a policy to implement a plan regarding inoperable elevators at Penn Station as follows as set forth in Exhibit A, at a minimum the policy will provided:

   ii.    Upon notification that an elevator used to access a track is in disrepair, the LIRR shall post signage on the upper and lower floor doors of the inoperable elevators directing customers in need of assistance to contact an Ambassador of LIRR Cares. Signage shall be in accordance with applicable provisions of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and their supporting regulations.

   iii.   The LIRR agrees that, upon notification that a mobility-impaired person cannot access a platform without the use of an elevator, the LIRR shall create a process whereby the Station Master at Penn Station will be notified that a mobility-impaired customer is affected by an elevator outage. Upon notification, the Station Master will be responsible to make reasonable operationally feasible efforts to ensure the next train to the mobility-impaired passenger's desired destination will be assigned to a track with a working elevator. However, the ability to comply with the request is dependent upon notice, track capacity and cannot always be guaranteed.

iv.   Upon notification that a mobility-impaired person cannot access the platform at Penn Station because of an inoperable elevator, the LIRR agrees through its Ambassador Program or equivalent program to evaluate and advise the mobility-impaired person if s/he can transfer at Jamaica Station onto the rail line s/he intends to use. The LIRR agrees to ask the disabled person if s/he requires the assistance of an Ambassador to transfer at Jamaica Station. If the mobility-impaired person acknowledges the need of assistance, an Ambassador, when available, will meet the customer at Jamaica and provide assistance locating a conductor so that they may transfer onto the appropriate train at Jamaica.

18.   **DISCIPLINE.**

a.   The LIRR agrees to enforce its supervision and discipline procedure of represented employees who are found to have intentionally neglected a disabled person. If a represented employee is found to have intentionally not assisted a disabled passenger, then the employee shall be subject to corrective action, including discipline and progressive discipline. Allegations that a represented employee intentionally refused to assist a disabled passenger shall be investigated, which include taking statements from witnesses. Plaintiffs acknowledge that the discipline of conductors and assistant conductors shall be consistent with the Collective Bargaining Agreement.

b.   Complaints regarding an employee's conduct may be asserted via the MTA website, by telephone, or email directed to the ADA Coordinator at the LIRR. The phone number is 718-558-7953 and email address is adacoord@lirr.org. If the number or email address to make complaints is changed, counsel for Plaintiffs shall be notified.

11

Complainants are advised to note the badge number of a conductor, the time they boarded the train, the destination of the train, and, if possible, the car number of the train which is listed in the vestibule and outside near the doors.

19. **TESTING.** The LIRR agrees to adopt a policy and implement a plan to:

a.     Revise the SAFER reports to identify crewmembers' responsibilities pursuant to the ADA – i.e., inspection of the station platforms to assess if a person needs assistance boarding the train or deployment of a bridge plate; offer assistance crossing the platform gap; use and securing a bridge plate.

b.     Create a code in SAFER reports for the rule related to visual inspection of the platform, deployment of a bridge plate, and securing a bridge plate.

20. **INSTALLATION OF KIOSK.**

a.     The LIRR has allocated $5,000,000 for the purchase and installation of Help Point Kiosks at its stations within the MTA 2020-2024 Capital Program.  It is the long-term goal of the LIRR to install Help Point Kiosks at all stations, and will make reasonable efforts to program additional funding in the future capital budget, to continue this effort. However, due to the uncertainty resulting from the COVID-19 pandemic, which has significantly impacted the current finances of the MTA and the LIRR, the amount of funding for present and future projects cannot be assured. If monies currently allocated in the MTA 2020-2024 Capital Program to the installation of the kiosks is reduced due to the uncertainty resulting from the COVID-19 pandemic, Defendants shall notify Plaintiffs pursuant to Section V of the Agreement. In addition to the stand-alone Help Point installation work taking place under this capital project, the LIRR shall incorporate Help Point installation as part of a larger platform replacement project, as they are undertaken.   Help Point Kiosks are a

12

relatively new station feature for the LIRR and the technology in this area is evolving. Thus, the LIRR reserves the right to deploy other devices if it determines the other devices would be more cost efficient and effective. The installation of the Kiosks shall comply with the ADA and Section 504 of the Rehabilitation Act.

    b.      The LIRR will install signage related to the kiosks compliant with and as required by the ADA and RA.

    c.   The LIRR agrees to prioritize installation of a Help Point kiosk at Bellmore within eighteen (18) months from the execution of the agreement. Installation of a Help Point kiosk at Amityville will take place contemporaneously with the installation of the elevator at the station. However, due to the uncertainty resulting from the COVID-19 pandemic, if Defendants become unable to meet the deadline set forth herein due to COVID-19 related issues, Defendants shall provide notice to Plaintiffs as set forth in Section V of this Agreement..

21.    The LIRR agrees to start the implementation of the agreement, including training and notices, within six (6) months from the execution of the agreement. The LIRR agrees to offer a representative of SILO to be on the LIRR's ADA Task Force within 90 days of the date of this Agreement.

## SECTION V

## DISPUTE RESOLUTION

22.    In the event of any disputes arising from this Agreement, Parties agree to the following procedure.

23.     Notice in Writing. If Counsel of a Party perceives noncompliance with this Agreement, that counsel shall notify the Counsel of the other Party in writing of the perceived noncompliance.

24.     Parties agree to meet and confer in good faith within 10 business days after receiving notice in writing pursuant to Paragraph 23, *supra*, to discuss and try to resolve the dispute.

25.     If the dispute is not resolved within sixty (60) days of meet and confer efforts between the Parties pursuant to Paragraph 24, *supra*, any Party may file a motion with the Court to enforce the settlement.  Attorneys' fees and costs in connection with any motion to enforce the terms of the settlement may be claimed in accordance with applicable law.

### SECTION VI

### DAMAGES, ATTORNEYS FEES AND EXPENSES

26.     Parties agree Defendant shall pay Plaintiff's counsel the following amount for reasonable attorney's fees and costs related to this litigation: $60,000. This amount shall be paid within 60 days following the Court's approval of the settlement agreement.

27.     **Damages**. The Defendants agree to pay the sum of ($10,000) to each Plaintiff as settlement of their claims for compensatory and statutory damages ("Payment for Damages"). The Payment for Damages shall be made by delivering via certified mail, overnight mail, or via Federal Express to Plaintiff's attorneys, "James E. Bahamonde, P.C.", Attn: James E. Bahamonde, Esq., 2501 Jody Court, North Bellmore, New York 11710. This check shall be sent via certified mail, overnight mail or via Federal Express to the law firm of James E. Bahamonde, P.C. 2501 Jody Court, Bellmore, New York 11710.

28.     If any portion of the monetary payment is not received within sixty (60) days, interest at the statutory rate, will be charged on all fees, cost and/or expenses.

14

29.     If any of the aforementioned payments are not paid timely, and in the amount agreed upon herein, then Plaintiffs reserve the right to use all legal avenues to enforce this agreement, with all attorney's fees, costs, collection fees and expenses incurred by the Plaintiffs and/or plaintiff's counsel to be fully reimbursed by the defendants jointly and severally.

## SECTION VII

## SEVERABILITY

30.     If any provision of the Agreement is invalidated by a Court of competent jurisdiction, then all of the remaining provisions of the Agreement shall remain enforceable and in full force and effect, provided that both Parties may still effectively realize the complete benefit of the promises and considerations conferred hereby.

## SECTION VIII

## EXECUTION IN COUNTERPARTS

31.     The Agreement can be executed in counterparts, all of which shall be taken to be one and the same instrument, for the same effect as if all Parties hereto had signed the same signature page.  A facsimile copy of any party's signature shall be deemed as legally binding as the original signatures.

## SECTION IX

## COMMUNICATIONS TO PLAINTIFFS AND DEFENDANTS

32.     Unless otherwise indicated in the Agreement, all notices or communications required by this Agreement shall be in writing by email or certified mail addressed to each respective Counsel as follows, unless counsel for other Party notifies counsel for other Party in writing of any change:

15

To Plaintiffs' Counsel:

James E. Bahamonde
Law Offices of James E. Bahamonde, PC
2501 Jody Ct.
North Bellmore, NY 11710
james@civilrightsny.com


To Defendants' Counsel:

Kevin McCaffrey
Assistant Deputy General Counsel
The Long Island Rail Road Company
Law Department - 1143
Jamaica, NY 11435
kpmccaf@lirr.org

---

SELF INITIATED LIVING OPTIONS, INC.

Joseph Delgado, Executive Director of Self
Initiated Living Options

Date: June____, 2020

---

LONG ISLAND RAIL ROAD COMPANY

By Paige Graves, Esq

Title: Vice President/General Counsel and
Secretary


Date: June____, 2020

---

GINA BARBARA

Date: June____, 2020

To Plaintiffs' Counsel:

James E. Bahamonde
Law Offices of James E. Bahamonde, PC
2501 Jody Ct.
North Bellmore, NY 11710
james@civilrightsny.com


To Defendants' Counsel:

Kevin McCaffrey
Assistant Deputy General Counsel
The Long Island Rail Road Company
Law Department - 1143
Jamaica, NY 11435
kpmccaf @lirr.org


---

**SELF INITIATED LIVING OPTIONS, INC.**

Joseph Delgado, Executive Director of Self
Initiated Living Options

Date: June____, 2020

---

**LONG ISLAND RAIL ROAD COMPANY**

By Paige Graves, Esq

Title: Vice President/General Counsel and
Secretary


Date: June____, 2020


*Gina Barbara*

---

GINA BARBARA

Date: June 14, 2020

16

_____

RAYMOND HAREWOOD


Date: June____, 2020


LAW OFFICES OF JAMES E. BAHAMONDE, PC
*Attorney for Plaintiffs*

_____

   JAMES E. BAHAMONDE, ESQ.
   2501 Jody Court
   North Bellmore, NY 11710
   Tel:  (646) 290-8258
   Fax: (646) 435-4376
   E-mail:  James@CivilRightsNY.com

Date: June____, 2020


LONG ISLAND RAIL ROAD
*Attorney for Defendant Long Island Rail
Road Company*

_____

Kevin McCaffrey
Jamaica Station Building
Jamaica, NY 11435
Tel:  718-558-6820
E-mail:  kpmccaf@lirr.org

Dated: June____, 2020


It is so ORDERED this _____ day of _____, 2020.


_____

HON. A. KATHLEEN TOMLINSON
UNITED STATES MAGISTRATE JUDGE


17

To Plaintiffs' Counsel:

James E. Bahamonde
Law Offices of James E. Bahamonde, PC
2501 Jody Ct.
North Bellmore, NY 11710
james@civilrightsny.com


To Defendants' Counsel:

Kevin McCaffrey
Assistant Deputy General Counsel
The Long Island Rail Road Company
Law Department - 1143
Jamaica, NY 11435
kpmccaf@lirr.org


_____

SELF INITIATED LIVING OPTIONS, INC.

Joseph Delgado, Executive Director of Self
Initiated Living Options

Date: June____, 2020


_____

LONG ISLAND RAIL ROAD COMPANY

By Paige Graves, Esq

Title: Vice President/General Counsel and
Secretary

Date: June _9_ , 2020


_____

GINA BARBARA

Date: June____, 2020

_____
RAYMOND HAREWOOD


Date: June /2 2020



LAW OFFICES OF JAMES E. BAHAMONDE, PC
*Attorney for Plaintiffs*

LONG ISLAND RAIL ROAD
*Attorney for Defendant Long Island Rail
Road Company*

_____

_____

   JAMES E. BAHAMONDE, ESQ.
   2501 Jody Court
   North Bellmore, NY 11710
   Tel:  (646) 290-8258
   Fax: (646) 435-4376
   E-mail:  James@CivilRightsNY.com

Date: June____, 2020

Kevin McCaffrey
Jamaica Station Building
Jamaica,  NY 11435
Tel:  718-558-6820
E-mail:  kpmccaf@lirr.org

Dated: June____, 2020



It is so ORDERED this _____ day of _____, 2020.


_____

HON. A. KATHLEEN TOMLINSON
UNITED STATES MAGISTRATE JUDGE


17

_____

RAYMOND HAREWOOD

Date: June_____, 2020

LAW OFFICES OF JAMES E. BAHAMONDE, PC          LONG ISLAND RAIL ROAD
*Attorney for Plaintiffs*                                          *Attorney for Defendant Long Island Rail*
                                                                        *Road Company*

_____          _____

JAMES E. BAHAMONDE, ESQ.                      Kevin McCaffrey
2501 Jody Court                                          Jamaica Station Building
North Bellmore, NY 11710                          Jamaica, NY 11435
Tel: (646) 290-8258                                     Tel: 718-558-6820
Fax: (646) 435-4376                                    E-mail: kpmccaf@lirr.org
E-mail: James@CivilRightsNY.com

Date: June _11_, 2020                               Dated: June_____, 2020

It is so ORDERED this _____ day of _____, 2020.

_____

HON. A. KATHLEEN TOMLINSON
UNITED STATES MAGISTRATE JUDGE

17

_____

RAYMOND HAREWOOD


Date: June____, 2020


LAW OFFICES OF JAMES E. BAHAMONDE, PC          LONG ISLAND RAIL ROAD
*Attorney for Plaintiffs*                       *Attorney for Defendant Long Island Rail Road Company*

_____                _____

JAMES E. BAHAMONDE, ESQ.                        Kevin McCaffrey
2501 Jody Court                                 Jamaica Station Building
North Bellmore, NY 11710                        Jamaica, NY 11435
Tel: (646) 290-8258                             Tel: 718-558-6820
Fax: (646) 435-4376                             E-mail: kpmccaf@lirr.org
E-mail: James@CivilRightsNY.com

Date: May____, 2020                             Dated: June____, 2020


It is so ORDERED this ___15th___ day of ___July_____, 2020.


/s/ AK Tomlinson
_____

HON. A. KATHLEEN TOMLINSON
UNITED STATES MAGISTRATE JUDGE


17